IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

MEGAN HARRELL, an individual, )
)
        Plaintiff, )
)
-vs- ) Case No. CIV-04-1308-F
)
BG PRODUCTS, INC., an Oklahoma )
corporation, )
)
        Defendant. )

## **O R D E R**

Before the court is Defendant's Motion for Summary Judgment, filed March 1, 2005 (docket entry no. 20). Plaintiff, with the court's permission, responded to the motion on June 20, 2005 (docket entry no. 26). Defendant, with the court's permission, filed a reply brief on June 29, 2005 (docket entry no. 29). Upon due consideration of the parties' submissions, the court makes its determination.

Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the

opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Background

This action was removed by defendant from the District Court of Oklahoma County, State of Oklahoma. In the amended petition filed in the state court on October 5, 2004, plaintiff, Megan Harrell ("Harrell"), alleges claims against defendant, BG Products, Inc. ("BG Products"), for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* BG Products, with its motion, seeks summary judgment on these claims.

The following relevant facts are undisputed or viewed in a light most favorable to Harrell, the non-moving party. Harrell is a former employee of BG Products. Harrell was employed by BG Products from April 24, 2002 until January 28, 2004. Harrell started at BG Products as a temporary employee. However, on July 24, 2002, Harrell became a full-time employee. Harrell served BG Products in the position of administrative assistant.

As a full-time employee, Harrell was eligible to participate in BG Products' SIMPLE IRA plan, which was an ERISA-qualifying plan. Participation in the plan allowed Harrell to contribute to her account, through payroll deductions, a maximum amount of $8,000 in 2003 and a maximum amount of $9,000 in 2004. In addition, participating employees were entitled to receive matching contributions from BG Products of up to 3% of their annual income.

The Hartford Financial Services Group ("Hartford") was administrator for the SIMPLE IRA plan.

On August 14, 2003, Harrell elected to participate in the SIMPLE IRA plan, requesting that $81.82 be withheld from each of her paychecks for contribution into her account. Almost two months later, on October 2, 2003, Harrell elected to have $100.00 withheld from each of her paychecks for contribution into her account.

In January of 2004, Harrell noticed that the amount credited to her SIMPLE IRA account was less than the amounts withheld from her paychecks. Harrell contacted Hartford to inquire why her payroll deductions had not been credited. According to Harrell, Hartford informed Harrell that the amount credited to her account represented all the funds that BG Products had forwarded to Hartford for her account.

On January 15, 2004, Harrell informed Louise Thompson ("Thompson"), owner of BG Products, that her SIMPLE IRA account statement did not reflect that the withholdings from her October, November, and December paychecks had been deposited into her SIMPLE IRA account. Thompson told Harrell that BG Products would investigate the deposit issue and would make right any problems with deposits into her account. Harrell also informed Thompson that she had called Hartford to inquire about her account funds. In her deposition, Harrell testified as to her conversation with Thompson as follows:

> A.   I told her that I hadn't understood my statement and that I called [Hartford] and I didn't know what was going on but it looked like the contributions weren't being made every month to my account even though the money was being taken out of my paycheck.
>
> Q.   And what was her response?
>
> A.   She was very upset.
>
> Q.   When you say she was very upset, what did she say?

> A. She couldn't believe it. She said she would do what she could to make everything right and she would find out what had happened.
>
> Q. Now, when you say she was very upset, was she upset at you or was she upset that the money was not being contributed?
>
> A. My impression was a little of both.
>
> Q. What was it that made you think she was upset with you, what did she say?
>
> A. She wanted to know why I had called them.
>
> Q. Them being the Hartford?
>
> A. Yes.
>
> \* \* \* \*
>
> Q. Was there anything else that she said other than asking you why you had called The Hartford that made you believe she was upset with you over this situation?
>
> A. Just her attitude.

Exhibit 4 to BG Products' motion, Deposition of Megan Gaye Harrell, p. 48, ll. 21-25, p. 49, ll. 1-16, 20-25.

BG Products' investigation determined that the withholding from Harrell's October paychecks had been forwarded to Hartford but not within the time period required. The delayed October 2003 contribution was deposited into Harrell's SIMPLE IRA account on January 5, 2004. However, Harrell was unaware that the October 2003 contribution had been deposited when she complained to Thompson.

All other deposits to which Harrell was entitled were made into her SIMPLE IRA account prior to her commencement of this action.

On January 24, 2003, BG Products presented Harrell, and she accepted, a check for $25 to compensate her for any losses that she might have suffered as a result of the delayed October 2003 deposit into her account.

On January 27, 2004, Harrell elected to discontinue her contributions into her SIMPLE IRA account.

On January 28, 2004, Harrell's employment was terminated.

In this action, Harrell alleges that BG Products' failure to timely deposit the October 2003 contribution violated ERISA. Harrell seeks damages for interest and/or loss of investment returns for this violation. She also alleges that BG Products' termination of her employment violated ERISA because BG Products terminated her in retaliation for exercising her rights protected under ERISA. Harrell seeks back pay for this violation. As previously stated, BG Products seeks summary judgment on these claims.

Discussion

A. ERISA Benefits Claim - Interest and/or Loss of Investment Returns

Harrell seeks damages against BG Products for interest and/or loss of investment returns resulting from BG Products' delayed deposit of her October 2003 contribution to her SIMPLE IRA account. BG Products contends that it is entitled to summary judgment on Harrell's ERISA benefits claim because Harrell conceded in deposition that she has no such damages. In addition, BG Products contends that this claim fails, as a matter of law, because a recovery measured by lost interest or loss of investment returns does not constitute "other appropriate equitable relief" under 29 U.S.C. § 1132(a)(3). Instead, BG Products argues that the claim for interest and/or loss of investment returns is one for consequential damages and consequential damages are not recoverable under ERISA. BG Products further asserts that the Tenth

Circuit has specifically held, in Moffett v. Halliburton Energy Servs. Inc., 291 F.3d 1227, 1234 (10th Cir. 2002), that monetary compensation for economic or other harm suffered because of the delay in the receipt of benefits is not available under ERISA.

In response to BG Products' motion, Harrell concedes that she has nothing but nominal damages for interest and/or loss of investment of returns. Harrell represents that "[i]n the absence of a remedy for punitive damages, there are no damages, and therefore Plaintiff concedes this claim."[1]  *See*, Harrell's Response to Motion for Summary Judgment, pg. 2.

As Harrell concedes this ERISA benefits claim and it appears from the record that Harrell has no recoverable damages for this claim, the court concludes that BG Products is entitled to summary judgment on her ERISA benefits claim for interest and/or loss of investment returns due to BG Products' failure to timely deposit her October 2003 contribution.

Retaliation Claim

BG Products also contends that it is entitled to summary judgment on Harrell's retaliation claim based on two grounds. First, BG Products contends that Harrell cannot establish a prima facie case of retaliation. Second, it asserts that Harrell cannot proffer sufficient evidence to rebut BG Products' legitimate, non-retaliatory reason for Harrell's termination, i.e., Harrell had a negative attitude and the negative attitude had a negative impact on the office environment.

Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge . . . a participant . . for exercising any right to which [she] is entitled under

---

[1] Harrell originally claimed that she was entitled to punitive damages as a result of BG Products' alleged conduct. However, upon motion by BG Products, the court dismissed Harrell's claim for punitive or exemplary damages. *See*, Order entered November 23, 2004 (docket entry no. 14).

the provisions of an employee benefit plan [or] this subchapter." 29 U.S.C. § 1140. To prevail under section 510, a plaintiff must demonstrate that defendant had the specific intent to engage in prohibited retaliatory conduct. *See*, Phelps v. Field Real Estate Co., 991 F.2d 645, 649 (10th Cir. 1993); Kreinik v. Showbran Photo, Inc., 2003 WL 22339268, *3 (S.D.N.Y. October 14, 2003). The plaintiff can satisfy her burden by relying on either direct or circumstantial proof of defendant's intent. *See*, Garratt v. Walker, 164 F.3d 1249, 1256 (10th Cir. 1998) (*en banc*). It appears that Harrell is relying upon circumstantial evidence to establish BG Products' intent and therefore employing the well-known, burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). *See*, Rath v. Selection Research, Inc., 978 F.2d 1087, 1089-90 (8th Cir. 1992) (applying the McDonnell Douglas analysis to a section 510 retaliation claim).

Under the McDonnell Douglas method, the plaintiff must first establish a prima facie case of retaliation. *See*, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). By establishing a prima facie case, the plaintiff raises a rebuttable presumption that the defendant unlawfully retaliated against her. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993). The burden then shifts to the defendant to articulate some legitimate, non-retaliatory reason for its employment action. Reeves, 530 U.S. at 142. The defendant's burden at this stage is one of production, not one of persuasion. *Id*. Finally, if the defendant articulates a non-retaliatory reason, then the burden shifts to the plaintiff to show that the defendant's proffered reason is merely a pretext for retaliation. *Id*.

To establish a prima facie case of "retaliation" for exercising a right granted under an employee benefit plan or ERISA, the plaintiff must show (1) statutorily protected activity; (2) an adverse employment action; and (3) a causal connection

7

between the two.  *See*, Rath, 978 F.2d at 1090; Simpson v. Ernst & Young, 879 F. Supp. 802, 813 (S.D. Ohio 1994).  "The requisite causal connection may be proved circumstantially by proof that a discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive."  Rath, 978 F.2d at 1090.

The court finds that sufficient evidence exists in the record to establish a prima facie case of retaliation.  It is undisputed that Harrell was discharged.  Harrell has also presented evidence that she complained to BG Products about not receiving her credit for her deductions.  Harrell has also presented evidence that she inquired of Hartford about not receiving credit for her deductions and alerted BG Products that she had made such inquiry.  There is also evidence that Harrell was terminated 13 days after she complained to BG Products and informed it that she had inquired of Hartford about her account.   The court concludes that this evidence is sufficient to show, for summary judgment purposes,  a causal connection between the protected activity and the adverse employment action.  *See*, *e.g.*, Annett v. Univ. of Kansas, 371 F.3d 1233, 1240-41 (10th Cir. 2004) (concluding  that two to three months between protected activity and alleged retaliatory conduct was close enough to establish causation); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (assuming that temporal proximity of two months and one week sufficient to support causation); and Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that one and one-half month period between protected activity and adverse action may establish causation).

As Harrell has established a prima facie case under the McDonnell Douglas framework, the burden shifts to BG products to articulate a non-retaliatory reason for its decision to terminate Harrell's employment.  The burden is one of production and not persuasion.  Reeves, 530 U.S. at 142.  In this case, BG Products has offered

admissible evidence sufficient for the trier of fact to conclude that Harrell was fired because she had a negative attitude and that this negative attitude had a negative impact on the office environment. The court thus concludes that BG Products has met its burden of production.

At the third and final stage of the McDonnell Douglas analysis, the burden shifts back to Harrell to show that the reason offered by BG Products is a pretext for retaliation. Reeves, 530 U.S. at 143. Harrell may establish pretext by showing that BG Products' proffered explanation for its employment decision is unworthy of credence. *Id*. A prima facie case, combined with sufficient evidence to find that the employer's proffered explanation is unworthy of credence, may permit the trier of fact to conclude that the employer unlawfully retaliated. *Id*. at 148.

Although the issue is a close one, the court, viewing the evidence in the record in a light most favorable to Harrell, concludes that a genuine issue exists as to whether BG Products' proffered reason for its decision to terminate Harrell is pretextual. The court therefore concludes that summary judgment is not appropriate and Harrell's retaliation claim shall proceed to bench trial.

Entitlement to Back Pay

Even though Harrell's retaliation claim is to proceed to bench trial, BG Products contends that it is entitled to summary judgment on Harrell's request for back pay for the claim. BG Products maintains that the Tenth Circuit has squarely held in Millsap v. McDonnell Douglas Corp., 368 F.3d 1246, 1260 (10th Cir. 2004), that back pay is not an available remedy under ERISA.

Harrell contends that Millsap should not apply because the facts in this case are different than in Millsap. According to Harrell, the plaintiffs in Millsap had other remedies available; remedies that would not be preempted by ERISA. In this case,

Harrell asserts that she was denied a remedy in state court due to ERISA preemption. Harrell contends that if she prevails in this action but the court awards no remedy under ERISA, when seeks she a reimbursement remedy, perhaps in state court, BG Products will again argue ERISA preemption. Harrell states that "[u]nless this Court is willing to see Plaintiff with no remedy, this Court should either deny summary judgment on the issue of back pay, or else note that Plaintiff may have subsequent state law or other reimbursement remedies, outside ERISA, regarding her claim for retaliation." *See*, Harrell's Response to Motion for Summary Judgment, pg. 5.

Although the court is not unsympathetic to Harrell's situation, the court is bound by the Tenth Circuit's decision in Millsap. "Section 502(a)(3) [of ERISA][2], by its terms, only allows for *equitable* relief. [Harrell's] freestanding claim for backpay – legal relief – is accordingly precluded by § 502(a)(3)'s plain terms. If exceptions to those terms are to be made, it is for Congress to undertake that task." *Id*. at 1260 (internal citations and quotations omitted). In light of the Tenth Circuit's decision in Millsap, the court concludes that BG Products is entitled to summary judgment as to Harrell's request for back pay.[3]

Conclusion

Based upon the foregoing, Defendant's Motion for Summary Judgment, filed March 1, 2005 (docket entry no. 20), is **GRANTED in part** and **DENIED in part**.

---

[2] Section 502(a)(3) of ERISA provides the plan participant with her exclusive remedies for a section 510 violation. Millsap, 368 F.3d at 1247.

[3] The court declines Harrell's request to "note that Plaintiff may have subsequent state law or other reimbursement remedies, outside ERISA, regarding her claim for retaliation." The only claim before the court is an ERISA section 510 retaliation claim. The court will not comment on whether Harrell may pursue any remedies based upon state law against BG Products.

Summary judgment is granted as to plaintiff's ERISA benefits claim. Summary judgment is denied as to plaintiff's retaliation claim but granted to the extent plaintiff seeks back pay as a remedy with respect to her retaliation claim.

Dated this 5th day of July, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-1308p007(pub).wpd